**Raymond Cornelius ALEXANDER, Petitioner-Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, United States Bureau of Prisons, Respondents-Appellees.**

No. 83–3708.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1983.

Decided Dec. 13, 1983.

Pamela J. Griffith, Ransom, Blackman & Simson, Portland, Or., for petitioner-appellant.

James L. Sutherland, Asst. U.S. Atty., Eugene, Or., for respondents-appellees.

Before FLETCHER and ALARCON, Circuit Judges, and JAMESON *, District Judge.

ALARCON, Circuit Judge:

Alexander has appealed the judgment dismissing his amended petition for a habeas corpus and the order denying his motion for reconsideration.

In his amended petition for habeas corpus relief, Alexander sought a hearing to challenge "the legality of the detainer lodged against him by the United States Parole Commission and/or Bureau of Prisons." The petition further alleges that "the United States Parole Commission's Inmate Disciplinary Committee held an administrative hearing without his presence and without allowing him an opportunity to consult with legal counsel and to gather all available evidence to disprove he escaped from Progress House." The district court found that: (1) the *in absentia* hearing did not violate Alexander's right to due process, and (2) if error occurred, the petitioner failed to show that he was prejudiced by

---

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

the procedure which was followed in the disciplinary proceedings.

## I.

## PERTINENT FACTS

Alexander was sentenced to a term of eight years for bank robbery in the district of Oregon on December 10, 1973. Alexander was released on parole but was returned to prison as a parole violator on October 10, 1978.

On April 7, 1981, Alexander was transferred from the United States Prison at Lompoc, California, to the Portland Progress House, a federal corrections community treatment halfway house facility in Portland, Oregon. Alexander was scheduled to be released on parole on October 25, 1981.

On August 4, 1981, Alexander checked out of the Portland Progress House at 8:05 p.m. on a community pass. He was to return by 11:00 p.m. At 10:30 p.m., Alexander was arrested by local police and charged with burglary. Alexander telephoned the counselor on duty at the Portland Progress House at 1:45 a.m. on August 5, 1981 to advise the federal authorities that he was in local custody and had been prevented from returning at the required time.

An incident report charging Alexander with escape was prepared by the corrections counselor who received the telephone call.

A second incident report was prepared at 2:00 p.m. on August 5, 1981, by the secretary at the Portland Progress House. This report described the "incident" as involving "[d]riving without permission, and Violation of Law while the resident is in the community." Neither incident report was delivered to Alexander.

A hearing was held at the Portland Progress House by the Center Disciplinary Committee. Alexander did not receive notice of this hearing. He was not advised of his rights before the Center Disciplinary Committee, nor was he given a copy of the form advising residents subject to disciplinary proceedings of their rights. Alexander was not represented at the hearing by a staff representative, nor was he advised of

such right. He was not advised of his right to present a statement and to submit documents, including written statements of unavailable witnesses, nor was he advised to offer relevant and material witnesses to appear on his behalf.

The only evidence considered at the August 17, 1981 proceedings was the sign-in and sign-out log.

The Center Disciplinary Committee recommended to the Community Program Officer, whose office is in Seattle, Washington, that Alexander be returned to an institutional setting, that he be placed under close supervision, that his statutory good time be rescinded, and that his parole be rescinded.

Alexander was not advised of his right to appeal by letter within 30 days of the imposition of any sanction, nor was he given a copy of the report issued by the Center Disciplinary Committee.

On August 26, 1981, the Community Program Officer ordered (1) that Alexander forfeit 60 days statutory good time, (2) return to a federal institution upon completion of his incarceration in an Oregon State prison, and (3) that his parole be rescinded.

On September 11, 1981, the United States Parole Commission ordered that Alexander's parole release date of October 25, 1981 be "retarded" because he was "found guilty of escape as indicated by the IDC report dated August 5, 1981." The Parole Commission notified Alexander that a parole rescission hearing would be held upon his return to federal authority. Alexander was also notified that the Commission's action in retarding his scheduled release date was not appealable.

Alexander was subsequently convicted of burglary in Oregon and is currently serving a 10-year sentence in that state's prison.

In its opinion and order filed February 22, 1982, the district court concluded that Alexander was not entitled to be present at the disciplinary proceeding because "the hearing officer apparently resides in Seattle, so a hearing at petitioner's place of

incarceration was not feasible." In fact, the disciplinary proceedings were conducted in Portland at the Progress House, while Alexander was being held in custody in a local Portland jail facility. Thus, the district court erred in concluding that it was not "feasible" to conduct the hearing in Alexander's presence because he was incarcerated in a different state and city.

In an order filed March 10, 1983, denying Alexander's motion for reconsideration, the district court stated that "even if he should have been present at the hearing, if it had been conducted in Portland he has not suffered prejudice" because Alexander failed to describe any evidence which would constitute a defense to the escape charge.

## II.

### ISSUES ON APPEAL

Alexander raises two issues on appeal.

One. The district court erred in dismissing the petition based on its conclusion that Alexander was not prejudiced as the result of the findings of the Disciplinary Committee following a hearing conducted in his absence.

Two. The district court erred in dismissing the petition insofar as Alexander seeks a speedy parole *revocation* hearing.

## III.

### DISCUSSION

#### A. *Procedural Error*

Alexander contends that the facts alleged in support of his petition for a writ of habeas corpus are sufficient to show that disciplinary proceedings conducted in his absence violated his right to due process. We agree.

Alexander did not receive advance written notice that disciplinary proceedings were to be conducted. He was not advised of his right to present witnesses or documentary evidence. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) the Supreme Court held that a prisoner facing a disciplinary proceeding was entitled as a matter of due process to notice of the claimed violation and an opportunity to present a defense. 418 U.S. 563–66, 94 S.Ct. at 2978–79.

Alexander also claims that he was entitled to be present at the hearing because the Center Disciplinary Committee was aware that he was in local custody.

Bureau of Prisons Program Statement No. 7610.3 sets forth procedures that must be followed by community treatment centers when a prisoner is arrested by local law enforcement officials. A prisoner charged with a "major prohibited act" may be punished by "major sanctions." P.S. 7610.3 § 6 at 2. Escape, which under the program statement includes an arrest by local authorities, can be punished by such major sanctions as parole date retardation, forfeiture of good time, and disciplinary transfer, P.S. 7610.3 § 6A, B, and C at 2.

The program statement is not clear as to the procedure that should be followed when a prisoner is in local custody.

Section 7 C of the Program Statement provides as follows:

> When informal resolution is not possible and disciplinary action is required, the center staff must decide whether the resident can remain at the center pending the hearing. If the center staff believes the resident, other than a person under supervision, may abscond prior to the hearing, or believes he constitutes a threat to staff or center residents, the center may request the U.S. Marshal to escort the resident to the local detention center (jail) pending the hearing. The hearing shall then be held in the detention center. The CPO must be advised immediately of any transfer and whenever possible shall be advised in advance of the move. This does *not* apply to persons under supervision; in emergency situations, the U.S.P.O. and/or local law enforcement personnel may be contacted.

The government argues that under Section C a hearing in a local jail is limited to federal prisoners who remain in federal custody but who have been removed from the

Community Center at the request of the staff.

Alexander tells us that Section 7 D requires a hearing in a local jail for a federal prisoner who has been arrested by local authorities.

Section 7 D provides as follows:

A formal hearing will be held where informal resolution is not considered appropriate or adequate. The resident has a right to be present at the hearing except during deliberations of the Committee or when security would be jeopardized. Exclusion of the resident must be documented. When a resident escapes or is otherwise absent from custody, the Committee shall conduct a hearing, in the resident's absence. If the resident is in confinement at a local jail, the hearing will be held at the jail. The charges will be reheard at the facility to which the inmate is designated after return to custody.

The government argues that Section D has no application to federal prisoners who are in local custody facing a local charge at the time of the Community Center's disciplinary proceeding. The government would limit Section D to persons placed in a local facility by federal authorities. We disagree. The government's reading of Section D ignores the last two sentences. The provision for a *rehearing* after the "return to custody" of a federal prisoner in the last sentence would have no rational meaning unless the previous sentence requiring a hearing in the local jail applies to federal prisoners who have been arrested by local law enforcement authorities and confined in the same community where the federal halfway house is situated.

■ We believe that Section D is intended to authorize an in absentia hearing where the prisoner has escaped and his whereabouts are unknown or where the prisoner is not in local custody. We agree with the district court's conclusion that "[t]he disciplinary guidelines strike a reasonable compromise: the resident receives a prompt hearing if he is incarcerated locally, *in absentia* if incarcerated elsewhere with a

rehearing at a later time." Under such circumstances, it would not be possible to conduct a disciplinary proceeding in the prisoner's presence. Where the prisoner is in local custody, such a hearing in the local facility offers minimal inconvenience to the staff and provides due process to the prisoner. We readily concede that other interpretations of the ambiguous language contained in Section D are possible. We believe that due process compels us to resolve any ambiguity in favor of the prisoner. This construction of Section D makes it unnecessary for us to consider Alexander's claim that the program statement violates equal protection.

■ Thus, it is our view that Alexander's petition for a writ of habeas corpus sets forth sufficient facts to show a deprivation of the right to notice and to present evidence at his disciplinary hearing at which "major prohibited acts" can result in "major sanctions." We are also satisfied that Alexander was entitled to be present at a hearing conducted in the local jail where the Community Center was located.

### B. *Prejudice*

The district court concluded that Alexander failed to show that he was prejudiced by any alleged denial of procedural due process because there is no defense to the charge of escape.

In view of the fact that the petitioner was denied notice and a hearing, we cannot say that there was no available defense to the charges in the incident report. The very purpose of notice and a hearing is to permit an accused the opportunity to present a defense or mitigating factors. Had the petitioner been present, he may have been able to persuade the Center Disciplinary Committee to impose or to recommend lesser sanctions.

Based solely on the disciplinary committee's finding that he had escaped, the United States Parole Commission has punished Alexander by delaying his parole release date which had been set for October 25, 1981. As a result of this order, Alexander

has also lost the opportunity to commence his parole supervision concurrently with his state prison term. Instead, he is now threatened with further federal imprisonment after he completes his state prison confinement. We are fully aware that the United States Parole Commission could have retarded Alexander's parole date based on the state charges. For reasons, not apparent, it chose not to do so.

The consequences of the parole retardation and the detainer which has been issued flowing from the invalid disciplinary proceedings may also directly affect (1) the length of time Alexander will be required to serve on the state charges, (2) whether he is classified as a maximum or minimum security prisoner, and (3) the nature of the rehabilitative program he may receive. We cannot assess the exact consequences of the Parole Commission's action because the district court dismissed the petition without a factual hearing. It is evident to us that, because of the disciplinary proceedings initiated by the Bureau of Prisons and because of the order issued by the State Parole Commission retarding Alexander's parole, Alexander's liberty interest may have been significantly prejudiced. This prejudice would necessarily result from an increase in the time Alexander may be required to serve in custody in state as well as federal institutions and on parole.

### C. Entitlement to Parole Revocation Proceedings

Alexander also seeks an order directing the United States Parole Commission to conduct a speedy revocation hearing. The district court properly rejected this request. Alexander was not on parole when he was arrested for a crime against the State of Oregon. The United States Parole Commission has no power to consider revocation before a parole term has commenced. While one might question the wisdom of such a strategy, it may be that Alexander is seeking a speedy parole rescission hearing. At such a hearing, we have no doubt that the United States Parole Commission might well consider Alexander's most recent state conviction, committed while he was on a pass from a federal halfway house, as proof that it acted unwisely and prematurely in setting Alexander's parole release for October 25, 1981. The district court correctly determined that the petition failed to set forth facts which would support an order directing the United States Parole Commission to schedule a speedy *revocation* hearing.

### CONCLUSION

The district court erred in dismissing the petition without conducting an evidentiary hearing. Sufficient facts were alleged in the petition to establish that the disciplinary hearing was conducted by the Bureau of Prisons in violation of Alexander's due process rights. The district court is directed to conduct an evidentiary hearing to determine the prejudicial effect of the action of the United States Parole Commission on September 11, 1981 in retarding Alexander's scheduled parole date of October 25, 1981, on his state prison confinement, and on the length of his federal confinement and parole supervision.

REVERSED and REMANDED.